IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

BRADY PALMER,

                               Plaintiff,                           OPINION and ORDER

     v.

                                                       23-cv-182-wmc

JORDAN PRIDE,

                               Defendant.

---

Plaintiff Brady Palmer, who represents himself, brought this lawsuit under 42 U.S.C. § 1983, claiming municipal officials in Black River Falls, Wisconsin, retaliated against him for raising matters of public concern. The court granted Palmer leave to proceed against only one of those officials, Jordan Pride, a Black River Falls Police Officer, for alleged retaliation in violation of the First Amendment in issuing him a "bogus" parking ticket. (Dkt. #5.) Defendant Pride filed a motion for summary judgment, arguing that plaintiff cannot establish a constitutional violation nor overcome his defense of qualified immunity. (Dkt. #21.) After considering the pleadings, exhibits, and applicable law in a light most favorable to plaintiff, defendant's motion for summary judgment is granted for the reasons explained below.

UNDISPUTED FACTS[1]

A resident of Black River Falls, Palmer has had hundreds of interactions with the Black River Falls Police Department ("BRFPD"). Although he estimates that about 90%

---

[1] Unless otherwise indicated, the following undisputed facts set forth in this section are taken from

of these interactions have been positive in nature, he has been critical of how drug offenses have been handled by certain officers.

Specifically, during the afternoon of March 16, 2016, Palmer was stopped by Police Chief Eisenhauer, who observed Palmer walking shirtless up Main Street in the cold. Eisenhauer also observed that Palmer was talking very loudly and appearing to be very excitable. Finally, when Palmer mentioned something about drug paraphernalia being given to the BRFPD but nothing being done about it, Chief Eisenhauer invited Palmer to come into the police station to talk about it. However, Palmer declined to do so, and Eisenhauer did not press the matter.

Later that evening, Palmer attended a meeting of the Black River Falls city council. After the city council received a report from the BRFPD regarding an agenda item (dkt. #17-1), Palmer interjected. After Mayor Ron Danielson gave him permission to speak, Palmer then stated:

> I got some crystal meth paraphernalia here. Give it to you. Can't just give it to an officer[] cuz' they pretend like they think I'm on meth. [cross talk] This one of them is from across the street – right across the street above the dance hall. Another one is from that place on 11th Street where I tried to get you to get the meth head over there 14 months ago.[2]

Palmer next confronted an officer who was present (Officer Andrew Noack), asking, "Are you patrolling right now?"

---

proposed findings of fact submitted in compliance with the court's procedures on summary judgment, which were provided to the parties with the pretrial conference order.

[2] *See* Audio Recording of the March 16, 2016, Special Common Council Meeting for the City of Black River Falls (Chown Decl. (dkt. #17) Ex. A at 34:33).

As Palmer's line of questioning became more personally targeted, however, Mayor Danielson spoke up to regain control of the meeting, instructing Palmer to stop by in the morning to talk with the chief of police and city administrator.  While Palmer interjected again about reporting a "stolen DVD player, that was their way to get this meth head out of his house on 11th Street, 16 times," Mayor Danielson managed to end the exchange with Palmer by thanking him for "bringing in the information."  Finally, when Palmer did not come to the police station the following day to make a further report, Chief Eisenhauer apparently concluded that Palmer had not only been in possession of drug paraphernalia, but that his primary reason for possession was the consumption of methamphetamine.  As a result, Palmer was issued a municipal citation.

Then fast forwarding nearly five years later, defendant Jordan Pride joined the BRFPD as a police officer in January 2021.  Officer Pride first encountered Palmer on February 4, 2021, at the E&F Motel in Black River Falls, which was owned by his grandmother and where Palmer had been staying overnight.  Pride was dispatched to the motel following a report that Palmer had pepper sprayed another man.  On the scene, Pride interviewed Palmer and the other man, Nathan Thorson.  Palmer acknowledged that after catching Thorson attempting to steal his bike, he pepper sprayed Thorson in his eyes.  After doing so, however, Pride then called emergency medical services, and Thorson declined to press charges after receiving treatment.  Later, Palmer even thanked Officer Pride for the manner in which he handled the incident.

Officer Pride's next encounter with Palmer occurred some seven months later, on September 2, 2021, again at the E&F Motel.  This time, Officer Pride learned that Palmer

had been reported as trespassing after being evicted from the premises in May of 2021. When Pride first stopped to investigate, he observed Palmer at the E&F Motel by himself. Palmer advised that his mother had just left. A few minutes later, she returned and Pride proceeded to speak with Palmer, his mother, and his Uncle James. Afterward, Pride determined that Palmer was allowed to visit the property when accompanied by his mother. Pride again did not arrest Palmer during this encounter, which lasted just under an hour, nor was Palmer issued any citation. Nevertheless, during this encounter, Palmer proceeded to complain to Pride about the weeds, barking dogs, and the conduct by two other police officers. Even after being informed that he would not be getting a citation, Palmer continued to talk with Officer Pride to complain about weeds until Pride ended their encounter.

Over the next three years, Officer Pride interacted with Palmer on approximately eight other occasions. During each of these encounters, Palmer was either the complaining party or a witness. On none of those occasions was Palmer either arrested or issued a citation.

Finally, at approximately 12:45 a.m. on July 16, 2022, Officer Pride issued a parking citation for a vehicle, which was left unattended in front of the City of Black River Falls Chamber of Commerce. Specifically, that citation was issued for exceeding the 15-minute parking limitation, contrary to a posted sign. As it turned out, the vehicle belonged to Palmer, who acknowledged in his deposition that he had parked in front of the Chamber of Commerce at 10:30 p.m. on the evening of July 15, 2022, because he intended to "get some steps" and investigate vandalism on an adjacent public pedestrian pathway known as

the "Foundation Trail."  Further, it is undisputed that Officer Pride's practice at that time was to clear the Chamber of Commerce parking lot of parked vehicles after 11:00 p.m., which is when the Foundation Trail closes for the night.  Officer Pride did not see Palmer when he issued the parking citation during the early morning hours of July 16, 2022, and Palmer did not see the parking citation until later in the day on July 16, 2022, at which point he protested the citation.  Although the citation was later dismissed, Palmer does not dispute that he was parked unlawfully when Officer Pride issued it.


OPINION

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  To survive summary judgment, the nonmovant "must go beyond the pleadings (*e.g.*, produce affidavits, depositions, answers to interrogatories, or admissions on file) to demonstrate that there is evidence upon which a jury could properly proceed to [reach] a verdict in [his] favor."  *Burton v. Kohn Law Firm, S.C.*, 934 F.3d 572, 579 (7th Cir. 2019) (citation and internal quotation marks omitted).

While the court views the record "in the light most favorable to the nonmovant and constru[es] all reasonable inferences from the evidence in his favor," *Moore v. Western Ill. Corr. Ctr.*, 89 F.4th 582, 590 (7th Cir. 2023), the nonmovant is only entitled to favorable inferences that are supported by admissible evidence, not those based upon mere

speculation or conjecture, *Grant v. Trustees of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017), or upon "[c]onclusory statements, not grounded in specific facts," *Bordelon v. Bd. of Educ. of the City of Chicago*, 811 F.3d 984, 989 (7th Cir. 2016).

In his suit under 42 U.S.C. § 1983, Palmer claims that Officer Pride issued the parking citation on July 16, 2022, in retaliation for the public criticism that he made against BRFPD during the city council meeting on March 16, 2016. Officer Pride, who was not even employed by BRFPD until January 2021, moves for summary judgment on the grounds that Palmer fails to offer sufficient evidence from which a reasonable jury could find the necessary causal connection between the parking citation that was issued in July 2022 and any constitutionally protected activity some six years earlier, as required to establish his claim of retaliation. Pride argues further that the citation was plainly valid because Palmer concedes that he parked his vehicle in excess of the posted 15-minute limitation and he invokes the defense of qualified immunity. For the reasons that follow, the court agrees on both grounds.

## I.     First Amendment Retaliation

"[A]s a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions, including criminal prosecutions, for speaking out." *Hartman v. Moore*, 547 U.S. 250, 256 (2006). "To prevail on a First Amendment retaliation claim, a plaintiff must establish three elements." *Holleman v. Zatecky*, 951 F.3d 873, 878 (7th Cir. 2020). "First, he must show he engaged in protected First Amendment activity." *Id*. "Second, he must show an adverse action was taken against him." *Id*. "Third,

he must show his protected conduct was at least a motivating factor of the adverse action." *Id*. (citing *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009)).

Viewing the record in the light most favorable to Palmer, as the nonmovant, the first two elements of a First Amendment retaliation claim appear satisfied.  Palmer contends that Officer Pride issued him a parking citation in retaliation for remarks that Palmer made during a city council meeting that were critical of local police.  Specifically, Palmer, who had been previously stopped by the chief of police for acting strangely on the afternoon of March 16, 2016, appeared before the city council later that evening to turn over drug paraphernalia, explaining that he was doing so because otherwise the police would think the paraphernalia belonged to him.  His remarks then veered off into criticism that police had previously ignored his reports of a stolen DVD player.

Officer Pride argues that Palmer's admittedly disjointed remarks at that March 2016 public meeting are not protected because they concern a personal interest in attempting to avoid being held accountable for being in possession of drug paraphernalia. (Dkt. #23, at 10-11.)  Whatever Palmer's private motivation may have been, however, "freedom of expression upon public questions is secured by the First Amendment[.]"  *New York Times Co. v. Sullivan*, 376 U.S. 254, 269 (1964).  This includes a private citizen's criticism of official conduct.  *Id*. at 273;  *see also Bridges v. California*, 314 U.S. 252, 270 (1941) ("[I]t is a prized American privilege to speak one's mind, although not always with perfect good taste, on all public institutions.");  *City of Houston v. Hill*, 482 U.S. 451, 461 (1987) (Where private citizens are concerned, "[t]he First Amendment protects a significant amount of verbal criticism and challenge directed at police officers.").

7

Accordingly, a reasonable jury *might* find the first element of Palmer's retaliation claim satisfied, even on this muddled record.  Similarly, a jury might reasonably find the *unjustified* issuance of a parking citation to be a sufficiently adverse action to deter speech, although since Palmer concedes he violated the parking rules (rather flagrantly), it is hard to see how a reasonable jury could find the issuance of a valid citation to be sufficient to deter one's exercise of his or her free speech right.

Regardless, as Officer Pride also argues, Palmer's retaliation claim completely collapses with respect to the third element of a First Amendment retaliation claim because he has shown *no* causal connection between his remarks to the city council in 2016, and the parking citation that Pride issued in 2022.  As Pride notes, he did not join the BRFPD until 2021, some five years after Palmer's less than memorable remarks to the city council. Yet Palmer presents no evidence from which a reasonable jury could find that Officer Pride was even aware of those remarks when he issued the parking citation in 2022.  *See Eaton v. J. H. Findorff & Son, Inc.*, 1 F.4th 508, 512 (7th Cir. 2021) ("In order to demonstrate that a defendant was motivated to retaliate based on the plaintiff's protected activity, the plaintiff must first produce evidence that the defendant had actual knowledge of the protected activity.");  *Luckie v. Ameritech Corp.*, 389 F.3d 708, 715 (7th Cir. 2004) ("It is not sufficient that [the defendant] *could* or even should have known about [the plaintiff's] complaints; [he] must have had actual knowledge of the complaints for [his] decisions to be retaliatory." (emphasis in original)).

Nor does the record permit any reasonable inference that Palmer's remarks could have been a motivating factor for the parking citation.  "A plaintiff may demonstrate

improper motive with evidence that the adverse decision took place on the heels of protected activity." *George v. Walker*, 535 F.3d 535, 539 (7th Cir. 2008) (citations and internal quotation marks omitted). However, any inference that protected speech was the motive for an adverse action weakens as time passes between the protected expression and the adverse action increases. *See id*. (concluding that a 22-month gap between speech and action is too long to support an inference of a causal connection). Thus, where the temporal gap is too long -- as a six-year gap certainly is here -- *additional* proof of a nexus is required. *Id*. Instead, Palmer offers no proof of any nexus between Officer Pride's decision to issue the parking ticket and the remarks he made before the city council six years before. *See Sweeney v. West*, 149 F.3d 550, 557 (7th Cir. 1998) (noting that when the temporal sequence fails to establish the required nexus between protected remarks and the alleged adverse action, "it is unnecessary to look any further").

To the contrary, the undisputed evidence is that a perfectly valid basis existed for defendant's issuance of the parking citation:  Palmer admitted his car was parked in front of the Chamber of Commerce far in excess of the 15-minute limit. *See Nieves v. Bartlett*, 587 U.S. 391, 402 (2019) (a plaintiff bringing a claim for retaliatory arrest or citation "must plead and prove the absence of probable cause for the arrest"); *Kitterman v. City of Belleville*, 66 F.4th 1084, 1091 (7th Cir. 2023) (same). If the officer had probable cause to arrest the plaintiff, the plaintiff may not assert a retaliatory-arrest claim. *Nieves*, 587 U.S.

at 402.  Thus, Palmer also cannot establish that the parking citation was issued without probable cause.[3]

## II.    Qualified Immunity

Officer Pride also contends that he is entitled to qualified immunity from Palmer's claims because his conduct did not violate a clearly established right.  Qualified immunity protects government officials from liability for damages unless they "violate clearly established statutory or constitutional rights." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Once the defense of qualified immunity is raised, the plaintiff bears the burden of defeating it by showing that:  (1) the defendant violated a constitutional right; and (2) the constitutional right was clearly established at the time of the violation.  *Garcia v. Posewitz*, 79 F.4th 874, 879 (7th Cir. 2023).  To be clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate." *Kisela v. Hughes*, 584 U.S. 100, 104 (2018).

---

[3] In fairness, there is a narrow exception to this rule: the existence of probable cause does not defeat a plaintiff's claim of retaliatory arrest if he produces "objective evidence that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been." *Nieves*, 587 U.S. at 407.  For example, if a plaintiff critical of the police is arrested for jaywalking, that plaintiff might prevail on a retaliatory-arrest claim by showing that "jaywalking is endemic but rarely results in arrest." *Id*.  Likewise, a plaintiff might prevail by pointing to "objective evidence that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been." *Id*.  Although Palmer alleges in an unsworn response to the summary-judgment motion that he was told by some city employee that he is the "only one" to ever receive a ticket for parking in front of the Chamber of Commerce (dkt. #29, at 2), his bare allegations based on hearsay are without factual support in the record and are insufficient to defeat summary judgment.  *See Majors v. General Elec. Co*., 714 F.3d 527, 540 (7th Cir. 2013); *Eisenstadt v. Centel Corp*., 113 F.3d 738, 742 (7th Cir. 1997) ("hearsay is inadmissible in summary judgment proceedings to the same extent that it is inadmissible in a trial").  Regardless, since no reasonable jury could find that Officer Pride retaliated against him because of his six-year-old remarks to the city council, defendant's motion for summary judgment must be granted.

Palmer fails to overcome Officer Pride's entitlement to qualified immunity as well. Indeed, as discussed above, he does not demonstrate a constitutional violation, much less the violation of a clearly established right. *See Nieves*, 587 U.S. at 402; *see also Lund v. City of Rockford, Ill.*, 956 F.3d 938, 948-949 (7th Cir. 2020) (concluding that officers were entitled to qualified immunity because, at the time of the arrest, it was not clearly established that an arrest supported by probable cause could violate the First Amendment) (citing *Reichle v. Howard*, 566 U.S. 658, 664 (2012)). Either way, Officer Pride is entitled to summary judgment on Palmer's retaliation claim.

## ORDER

IT IS ORDERED that:

1. Defendant Jordan Pride's motion for summary judgment (dkt. #15) is GRANTED.

2. This case is DISMISSED WITH PREJUDICE and the clerk of court is directed to enter judgment for the defendant.

Entered this 14th of August, 2024.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge